UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
COURT FILE NO.:  19-cv-2149 (NEB/LIB)

| | |
|---|---|
| Kevin Pone,<br><br>　　　　　　Plaintiff,<br>v.<br><br>Messerli & Kramer P.A. and Capital One Bank USA, N.A.,<br><br>　　　　　　Defendants. | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT MESSERLI & KRAMER'S MOTION FOR JUDGMENT ON THE PLEADINGS** |

Plaintiff Kevin Pone ("Plaintiff") respectfully submits this Memorandum in Opposition to Defendant Messerli & Kramer P.A.'s ("Defendant M&K") Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c).

## INTRODUCTION

This action arises out of Defendant Capital One Bank USA, N.A (hereinafter "Capital One") and its collection agent Defendant Messerli & Kramer P.A.'s (hereinafter "M&K") (collectively hereinafter "Defendants") baseless and misguided attempt to collect two alleged debts from Plaintiff by misusing the courts to obtain a judgment and then failing to take reasonable steps to remedy the errors and avoid continued harm to Plaintiff after confirming the debts were the result of fraud.

Defendant filed the pending motion seeking dismissal of Plaintiff's Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq,* invasion of privacy, abuse

1

of process,[1] and negligence claims. Defendant M&K first argues Plaintiff's FDCPA claims are barred by the one-year statute of limitations, and in the alternative, should be dismissed because Plaintiff, the victim of fraud, cannot prove the alleged debt was incurred for personal, family or household purposes. Defendant M&K further argues that Plaintiff's state law claims should likewise be dismissed because Plaintiff fails to plead sufficient elements of those claims.

For the reasons set forth below, Defendant M&K's Motion must be denied.

## FACTUAL BACKGROUND

In 2011, someone unknown to Plaintiff opened two credit card accounts (the "Accounts") with Defendant Capital One. (*See* Plaintiff's Proposed Amended Complaint ¶¶ 8-13 (hereinafter referred to as "Proposed Am. Cmp."), attached to Plaintiff's Motion to Amend as Exhibit 1(*ECF No. 31*)).[2] Upon information and belief, the Accounts were for credit cards opened in the name of an individual person, not a business or commercial entity, and are consumer "debts" as that terms is defined at 15 U.S.C. §1692a(5). (Proposed Am. Cmp. ¶¶ 9-12). In 2012, Defendant Capital One hired Defendant M&K to collect on the Accounts and as a result Defendant M&K opened two internal files to the Accounts bearing Defendant M&K file numbers 12-257647 and 12-256137. (Proposed Am. Cmp. ¶¶ 17, 18).

---

[1] Plaintiff's Abuse of Process claim is not addressed in this Memorandum and is hereby abandoned.
[2] The basis for referencing Plaintiff's Proposed Amended Complaint rather than the original Complaint in consideration of Defendant M&K's Motion is discussed below and in Plaintiff's contemporaneously filed Motion to Amend the Complaint.

Thereafter, Defendant M&K's attorney, Jillian Walker, executed a Summons and Complaint on behalf of her client Defendant Capital One seeking to collect on one of the Accounts and attempted service of said Summons and Complaint on or about November 9, 2012 but was unsuccessful. (Proposed Am. Cmp. ¶¶ 19-20). Defendant M&K then attempted service on July 6, 2013. (Proposed Am. Cmp. ¶ 21). According the Hennepin County Court records the original Complaint was served on Plaintiff's mother "Relanda Cadwell" at 7533 Idaho Avenue North in Brooklyn Park, Minnesota. (Proposed Am. Cmp. ¶¶ 22-23). However, Plaintiff's mother's name is Jacqueline Poe and he did not live at Idaho Avenue address in July 2013. (Proposed Am. Cmp. ¶¶ 24-25). Defendants then obtained a $6,923.68 default judgment against Plaintiff on August 22, 2013. (Proposed Am. Cmp. ¶ 26). Public records vendor(s) harvested the default judgment information and communicated it to the national credit reporting agencies (Trans Union, Experian and Equifax) who in turn began to publish this highly derogatory and erroneous information on Plaintiff's credit reports to his current and prospective creditors. (Proposed Am. Cmp. ¶ 27). At the same time Defendant Capital One was also reporting the Account tradelines on a monthly basis to the national credit reporting agencies as charged-off debts, which negatively impacted Plaintiff's credit profile and score. (Proposed Am. Cmp. ¶ 28).

Sometime after August 22, 2013, after receipt of disputes from Plaintiff, Defendants realized that the Accounts were the result of fraud and did not belong to him. (Proposed Am. Cmp. ¶ 30). On March 27, 2015, Defendant M&K closed its files on the Accounts but did not take any corrective action to vacate the erroneous Hennepin County judgment. (Proposed Am. Cmp. ¶ 31). Upon information and belief, Defendant Capital One

instructed Defendant M&K to vacate the default judgment against Plaintiff in 2016, 2017, 2018 and 2019 but that those instructions were ignored. (Proposed Am. Cmp. ¶ 32).

On or about July 12, 2016, Defendant Capital One sent Plaintiff a letter advising that the second Account was the result of fraud and promised that it submitted instructions to the national credit reporting agencies instructing them to delete it from Plaintiff's file. (Proposed Am. Cmp. ¶¶ 33-34). On July 13, 2019, Defendant Capital One sent another letter wherein it confirmed Plaintiff was the victim of fraud as to the first Account as well. (Proposed Am. Cmp. ¶ 35). However, upon information and belief, Defendant Capital One did not follow through on requests to delete the Accounts and/or re-reported the Accounts to the credit reporting agencies, because Defendant Capital One again requested deletion of the Accounts in June of 2019. (Proposed Am. Cmp. ¶¶ 36-37).

Despite knowing that they had obtained a judgment on a fraudulent account, neither Defendant M&K nor Defendant Capital One took any action to correct or vacate the erroneous judgment against Plaintiff for almost three (3) years. (Proposed Am. Cmp. ¶ 39). In fact, it was not until Plaintiff began to complain again in early 2019 that Defendants finally took steps necessary to vacate the erroneous judgment. (Proposed Am. Cmp. ¶ 41). On May 8, 2019, Defendants finally filed a Motion to Vacate Judgment and Dismiss but sought dismissal without prejudice (the "Motion") when they knew the underlying account was the result of fraud and that Plaintiff was "not responsible for any balance." (Proposed Am. Cmp. ¶ 42). Defendant M&K further misrepresented to the court in a supporting declaration to the Motion that the reason was that "Defendant was experiencing hardship" rather than the true reason – that Plaintiff was the victim of fraud and was not responsible

for the debt. The judgment was finally vacated on May 15, 2019, without prejudice. (Proposed Am. Cmp. ¶¶ 43-45).

## **LEGAL STANDARD**

The standard that applies to a motion to dismiss for failure to state a claim under 12(b)(6) of the Federal Rules of Civil Procedure also applied to a motion for judgment on the pleadings under Rule 12(c). *Kost v. Hunt*, 983 F.Supp. 2d 1121, 1124 (D.Minn. 2013), *citing Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009). Rule 8(a)(2) requires only that a plaintiff present "a short and plain statement of the claim showing that the pleader is entitled to relief." In order to meet this standard and survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *see also* Fed. R. Civ. P. 12(b)(6). A claim bears facial plausibility when it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When evaluating a motion to dismiss, the Court must accept factual allegations as true. *Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir.2012).

Some courts treat an amended complaint as mooting a pending motion to dismiss the original complaint. *See Olson v. Desserts on the Blvd., LLC,* No. 12–1629, 2013 WL 5446922, at *3 (E.D.Mo. Sept. 30, 2013) ("[P]ending motions pertaining to the original complaint should be denied as moot."); *West v. Crnkovich,* No. 12–273, 2013 WL 2295461, at *3 (D.Neb. May 24, 2013) (same); *Janis v. Nelson,* No. 09–5019, 2009 WL

5

4505933, at *1 (D.S.D. Nov. 24, 2009) (same); *Old Republic Nat'l Title Ins. Co. v. Greene Cnty. Abstract & Title Co., LLC,* No. 09–102, 2009 WL 2913511, at *1 (E.D.Ark. Sept. 8, 2009) (same). Some courts do not. *See Swider v. Hologic, Inc.,* No. 12–1547, 2012 WL 6015558, at *2–*3 (D.Minn. Dec. 3, 2012) (allowing amendment and then treating the motion to dismiss as one to dismiss the amended complaint); *Cedar Rapids Lodge & Suites, LLC v. JFS Dev., Inc.,* No. 09–175, 2010 WL 2836949, at *2 (N.D.Iowa July 19, 2010) (same). To the extent the Court chooses not to deny the Motion as moot, Plaintiff anticipates, based on the foregoing, that the Motion shall be considered based upon the proposed Amended Complaint as if it is the operative complaint. In this case, the parties and the district court considered the amended complaint and treated the already pending motion to dismiss as a motion to dismiss the amended complaint. *See Cartier v. Wells Fargo Bank, N.A.,* 547 Fed.Appx. 800, 803 (8th Cir. 2013) (affirming that the district court's treatment of the pending motion to dismiss as a motion to dismiss the amended complaint was within the court's discretion), *citing* 6 Charles Alan Wright, et al., *Federal Practice and Procedure* § 1476 (3d ed.2013).

## ARGUMENT

### I. Plaintiff's FDCPA Claims Are Not Time Barred.

Defendant M&K first argues that Plaintiff's FDCPA claims are barred by the one-year statute of limitations. Defendant's arguments should be rejected because, as the Proposed Amended Complaint makes clear, Plaintiff's claims are not based on conduct occurring beyond the statute of limitations and instead stem from conduct occurring in 2019.

The FDCPA imposes civil liability on debt collectors who violate its provisions. *See* 15 U.S.C. § 1692k. An action must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Consequently, the date on which an FDCPA violation occurs is often a contested issue, as it is in the instant matter. However, the general rule among the Circuit Courts is that the statute of limitations on FDCPA claims begins to run on the date that the debt collector had "its last opportunity to comply with the FDCPA." *Ness v. Gurstel Chargo, P.A.,* 933 F. Supp. 2d 1156, 1165 (D. Minn. 2013), *citing Mattson v. US. W. Commc'ns, Inc.,* 967 F.2d 259, 261 (8th Cir. 1992); *Johnson v. Riddle,* 305 F.3d 1107, 1113, n. 4 (10th Cir. 2002); *Maloy v. Phillips,* 64 F.3d 607, 608 (11th Cir. 1995); *Naas v. Stolman,* 130 F.3d 892, 893 (9th Cir. 1997).

Certainly, Defendants' collection conduct first began several years ago in 2012, when Defendant Capital One hired Defendant M&K to collect the Accounts. Defendant M&K in turn drafted a collection suit, attempted to serve Plaintiff but served a stranger instead, and then obtained a default judgment against him in August 2013. There was some additional activity in 2015 and 2016 regarding disputes and communications with the Attorney General's Office. While these facts provide historical context they do not form the basis of Plaintiff's FDCPA claims as suggested by Defendant M&K. Plaintiff is not and could not base a claim on these actions.

Instead, the crux of Plaintiff's FDCPA claims is that for almost six years after entry of the default judgment, between August 22, 2013 to May of 2019, by all appearances Defendant M&K did nothing despite knowing of the fraud and being directed by its client

7

to vacate the judgment in 2016, 2017, 2018 and 2019. To be clear, Defendant ignored these directives its client's instructions as late as 2018 and 2019. In May 2019, Defendant M&K finally took corrective action and moved to vacate the judgment, but in doing so further violated the FDCPA by making misrepresentations in the supporting declaration leading the court to enter dismissal without prejudice, leaving the door open for future collection activity. This conduct, that forms the basis of Plaintiff's FDCPA claims, was well within one year of Plaintiff's filing of the original complaint.

Consequently, Plaintiff's FDCPA claims are timely and the Motion should be denied.

## II. Plaintiff Alleges Sufficient Facts To Support The Debt Is A Consumer Debt.

Defendant M&K next argues that Plaintiff's FDCPA claims should be dismissed because he, the victim of identity theft and fraud, "failed to claim that the debt arises from a personal family or household obligation." (*See* ECF No. 21 - Memorandum of Defendant Messerli & Kramer P.A. in Support of Motion for Judgment on the Pleadings (hereinafter "Def. Memo") at p. 9.) Defendant M&K's statement in that regard is misleading – in the original Complaint, Plaintiff alleges he is a "consumer" and that someone opened two Capital One credit cards in *his* name which Defendant M&K, a "debt collector" as defined by the Act, sought to collect. The Amended Complaint in Paragraphs 7 – 12 (Proposed Am. Cmp.) provides additional facts in support of the alleged debt falling within the FDCPA's scope, including:

- The Accounts were for credit cards opened in the name of an individual person, not a business or commercial entity, and are consumer "debts" as that terms is defined at 15 U.S.C. §1692a(5). (Proposed Am. Cmp. ¶ 9).
- The Accounts were used, upon information and belief, for personal, family or household purposes and were consumer debts as is noted from the Summons (drafted and served by Defendant M&K) which included the Fair Debt Collection Practice Act, 15 U.S.C. §1692e(11), mandated warning, commonly referred to as the "mini-Miranda," that "This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose." (Proposed Am. Cmp. ¶ 10).
- Defendant M&K is one of the premiere consumer debt collection law firms in the State of Minnesota and would not include the "mini-Miranda" if it did not believe that it was seeking to collect a consumer debt as that term is defined by 15 U.S.C. § 1692a(5). (Proposed Am. Cmp. ¶ 11).
- Defendant M&K's website boasts about its *consumer* collection practice. See https://messerlikramer.com/practice-area/consumer-collections-creditors-remedies (last visited on November 13, 2019 at 4:10PM). (Proposed Am. Cmp. ¶ 12).

These facts are more than adequate to support the existence of a consumer debt. To expect or demand more from Plaintiff, the victim of identity theft and fraud, at the pleadings stage would be inconsistent with the purpose and scope of the FDCPA, which does not preclude wrongly-accused consumers from bringing a claim. *See Dunham v. Portfolio Recovery Assocs., L.L.C.*, 663 F.3d 997, 1002 (8th Cir. 2011) (holding that where a debt collector pursued a "wrong" person, the person targeted by the debt collector was a "consumer" protected by the FDCPA as the term "consumer" includes a person "alleged" to be obligated to pay any debt."). Such an outcome would be absurd, especially when the proof concerning the actual use of the credit cards and details of the purchases is within Defendants' possession and discoverable. *Kilpakis v. JPMorgan Chase Fin. Co., L.L.C.*, 229 F. Supp. 3d 133, 145 (E.D.N.Y. 2017); *Beltran v. Confidential Servs., Inc.*, 2009 WL 10672193 (S.D. Cal. Oct. 23, 2009); *Collins v. Portfolio Recovery Assocs.*, L.L.C., 2013

WL 9805805 (E.D. Tenn. June 7, 2013) (where the consumer lacks knowledge of the exact nature of the charges on an account due to alleged identity theft, the alleged obligation on a consumer account will nonetheless constitute a "debt" for purposes of FDCPA analysis). Accordingly, Defendant M&K's Motion must be denied.

### III. Because Plaintiff's FDCPA Claims Survive, Plaintiff's State Law Claims Are Properly Before This Court.

This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367, which provides jurisdiction over state-law claims forming part of the same "case or controversy" as federal claims. *A.W v. Preferred Platinum Plan, Inc.*, 923 F. Supp. 2d 1168, 1172 (D. Minn. 2013).

Plaintiff's Complaint states viable federal claims under the FDCPA that occurred less than one (1) year before its filing. Plaintiff's pendant state-law claims for Invasion of Privacy – Publication of Private Facts, Negligence, and Minn. Stat. §§ 482.07 and 481.071 violations, form part of the same "case or controversy" as Plaintiff's federal claims under the FDCPA. Therefore, Plaintiff's pendant state-law claims are properly before this court and should be decided in conjunction with the FDCPA claims.

### i. Plaintiff Has Pleaded An Actionable Claim For Invasion Of Privacy – Publication Of Private Facts.

Plaintiff alleges both Defendants' intentional conduct caused Plaintiff to be held in a false light to the public and his current and potential creditors for almost three years, until May 2019 when they finally moved to vacate the judgment and caused false credit information to be publicized during that three-year period. Defendant M&K alleges Plaintiff's

invasion-of-privacy claim fails because it did not publicize anything and that the blame lies with third-party records vendors who harvested the information and communicated it to the credit reporting agencies. Defendant M&K goes a step further and also argues it cannot be liable for invasion of privacy because it too was a "victim" and did not have "authority" to effectuate removal of the judgment. (Def. Memo at p. 13.)

Minnesota first recognized a tort action for invasion of privacy in *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231 (Minn.1998). In recognizing the right of privacy, the court stated:

> [t]he right to privacy is an integral part of our humanity; one has a public persona, exposed and active, and a private persona, guarded and preserved. The heart of our liberty is choosing which parts of our lives shall become public and which parts we shall hold close.

*Id*. at 235. The *Lake* court relied on the Restatement (Second) of Torts and found three causes of action comprising the tort invasion of privacy: intrusion upon seclusion, appropriation, and publication of private. *Id*. at 233, 235. *Lake* defined publication of private facts as:

> ***giv[ing] publicity to*** a matter concerning the private life of another * * * if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.

*Lake*, 582 N.W.2d at 233 (emphasis added). The *Lake* court did not define "publicity" or determine what matters would be highly offensive to a reasonable person or not of legitimate concern to the public.

In *Robins v. Conseco Finance Loan Co.*, 656 N.W.2d 241, 244-45 (Minn.App. 2003),[3] the Court analyzed the meaning of the word "publicity," relying again on the Restatement:

> "Publicity," as it is used in this Section, differs from "publication," * * *. "Publication," * * * is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. * * * Thus, it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

Restatement (Second) of Torts § 652D cmt. a (1977). Defendants' arguments rest on hyper-technical or misapplication of "publication" as defined by *Lake* and the Restatement. Even if neither of them personally "published" or printed the information as commonly understood, publication of private facts requires only "giving publicity to." The tortfeasor does not necessarily have to "publish" in the strict sense suggested by Defendants. The question is not whether they published something, but whether they "gave publicity to" a matter concerning Plaintiff's private life. Plaintiff's position, as outlined in the Amended Complaint, is that Defendants *did* give publicity to a matter concerning his private life, namely his finances and his alleged propensity to default on debt, when it allowed its ill-gotten judgement to remain a part of the public record for everyone, including his current and prospective creditors, to see.

---

[3] On summary judgment, the *Robins* court found in favor of the defendant after it determined the plaintiff had not stated a claim because the credit report was only disclosed to one person, rather than the public, which was upheld on appeal.

Defendants, a sophisticated creditor and a large-volume consumer collection law firm, chose to do so knowing the judgment existed, that it was a matter of public record, and that it would also be publicized in Plaintiff's credit report. Defendant M&K had a duty to obtain authority from its client to undo the default judgment and upon information and belief, did receive authority and instructions from its Defendant Capital One to proceed over the course of four years but failed to act. Accordingly, Defendant M&K was undeniably involved in creating and then sustaining the judgment. *See Yath v. Fairview Clinics NP*, 767 N.W.2d 34, 45 (Minn.App. 2009) (analyzing what satisfies "publicity" and upholding summary judgment for certain defendants who were not "involved in creating or sustaining the disparaging" webpage but leaving the door open for the parties responsible for obtaining the information that made its way onto the webpage). For these reasons, Defendant M&K's Motion should be denied.

### III.   Plaintiff Has Pleaded An Actionable Claim For Negligence.

Defendant M&K argues Plaintiff's negligence claim should be dismissed because he fails to allege that it owed him a duty of care. Defendant M&K's argument must be rejected, though, since it misconstrues the allegations contained in the Proposed Amended Complaint.

Negligence is the failure to exercise the level of care that a person of ordinary prudence would exercise under the same or similar circumstances. *Flom v. Flom*, 291 N.W.2d 914, 916 (Minn. 1980). Plaintiff alleges that Defendant M&K had a duty to vacate the judgment starting in 2016 when its client confirmed the two accounts were the result of identity theft and fraud, and that it breached its duty when it did nothing, even after instructions from its client in 2016 through 2019, and waited until May 2019 to take reasonable action to vacate

the judgment, and then request an order "without prejudice." Plaintiff's negligence claim is <u>not</u> premised on a lawyer-to-client duty or based on the duties owed by Defendant M&K to its client, Defendant Capital One. Rather, as the Proposed Amended Complaint suggests, the duty owed by Defendant M&K was that of an ordinary, reasonable person who obtains a default judgment against a party and later learns it was in error. Accordingly, Defendant M&K's Motion must be denied.

## **CONCLUSION**

Plaintiff was the victim of fraud and identity theft. To add insult to injury, Defendants made it impossible for Plaintiff to recover from it by violating the law themselves and failing to act as any reasonably prudent person would by taking appropriate steps to minimize continued harm over the course of several years. Defendants utilized the court system to suit their needs but then remained "hands-off" once they learned Plaintiff had no intention of paying the alleged debts. Plaintiff has pleaded sufficient facts demonstrating that the conduct that forms the basis of his FDCPA claims occurred within one year of filing the Complaint, that the debt at issue is a "consumer" debt. Further, his state law claims, with the exception of his abandoned Abuse of Prosecution claim, are properly alleged. For all the above-stated reasons, Defendant M&K's Motion for Judgment on the Pleadings must be denied.

Dated this 21st day of November, 2019.

By: s/Thomas J. Lyons Jr.
Thomas J. Lyons, Jr., Esq.
Attorney I.D. #249646
**CONSUMER JUSTICE CENTER P.A.**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  (651) 770-9707
Facsimile:   (651) 704-0907
tommy@consumerjusticecenter.com

*ATTORNEY FOR PLAINTIFF*