# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| KEVIN PONE, | Case No. 19-CV-2149 (NEB/LIB) |
| Plaintiff, | |
| v. | ORDER ON MOTION TO DISMISS AND MOTION FOR JUDGMENT ON THE PLEADINGS |
| MESSERLI & KRAMER P.A. and CAPITAL ONE BANK USA, N.A., | |
| Defendants. | |

Plaintiff Kevin Pone had an account with Capital One Bank USA, N.A. ("Capital One") that Capital One later determined to be the result of identity theft. After Defendants Capital One and Messerli & Kramer P.A. ("Messerli") attempted to collect on the account, Pone sued them for violations of state and federal law. Capital One and Messerli each seek dismissal of the claims asserted against them. For the reasons that follow, the Court grants in part and denies in part Capital One's motion to dismiss and grants Messerli's motion for judgment on the pleadings.

## BACKGROUND

The Court draws the following background from the operative complaint, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of Pone. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (explaining standard that applies to a motion under Rule 12(b)(6) of the

1

Federal Rules of Civil Procedure); *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (applying the same standard to a Rule 12(c) motion).

In 2011, someone unknown to Pone opened two credit card accounts with Capital One in his name (the "Accounts"). (*See* ECF No. 47 ("Am. Compl.") ¶¶ 8, 13.) Pone was thus the victim of identity theft. Debts incurred in connection with the Accounts were put into collection. In 2012, Capital One hired Messerli, a law firm specializing in consumer debt collection, to collect on the Accounts. (*Id.* ¶¶ 11, 17.) On August 22, 2013, Defendants obtained a $6,923.68 default judgment against Pone in Minnesota state court in connection with the debt owed on one of the Accounts. (*Id.* ¶ 26.) Public records vendors notified the national credit reporting agencies—that is, Trans Union, Experian, and Equifax (together, the "CRAs")—of the existence of the default judgment against Pone. (*Id.* ¶ 27.) The CRAs began listing information about the August 2013 default judgment against Pone on his credit reports. (*Id.*) At the same time, Capital One also reported the Accounts tradelines to the CRAs as charged-off debts (*Id.* ¶ 28), which negatively impacted Pone's credit profile and credit score. (*Id.*) Messerli closed its administrative files concerning the Accounts in March 2015. (*Id.* ¶ 31.)

Then in 2016, Capital One wrote to Pone, informing him that it had determined Account x9399 was fraudulent and that it had instructed the CRAs to delete the Account from Pone's credit file. (Am. Compl. ¶ 33, Ex. 3.) Indeed, in July 2016 Capital One sent instructions to the CRAs to remove references to both Accounts from Pone's credit

history. (Am. Compl. ¶¶ 34–35.) It also requested that Messerli vacate the August 2013 default judgment against Pone as early as 2016. (*Id.* ¶ 32.) Messerli did not do so. (*Id.*)

It was not until May 2019 that Messerli sought to vacate the August 2013 judgment against Pone. (*Id.* ¶ 42.) In its motion to vacate filed in Minnesota state court, Messerli requested that "the matter [be] dismissed without prejudice" because Pone was "experiencing a hardship"—not because the account was fraudulent. (Am. Compl. ¶¶ 42–43, Ex. 5.) The Minnesota state court vacated the judgment without prejudice. (Am. Compl. ¶ 46.)

Meanwhile, the CRAs had not fulfilled Capital One's 2016 request to remove references to the Accounts, so in 2019, Capital One made the request again. (*Id.* ¶ 38.) In 2017 and 2019, Capital One also pulled Pone's credit report several times, even though it knew by July 2016 that the Accounts were the result of identity theft. (*Id.* ¶¶ 33, 48.) Pone alleges that the default judgment and the charged-off debts reported to the CRAs caused serious harm to Pone's credit profile and credit score, and that he suffered distress and was denied credit. (*Id.* ¶¶ 57, 58, 61.)

Pone's Amended Complaint asserts claims for alleged FCRA violations and common law credit defamation against Capital One and claims for common law invasion of privacy and negligence against both Capital One and Messerli. (Am. Compl. ¶¶ 63–84.) The arguments for dismissal are now before the Court.

3

## ANALYSIS

### I.   Capital One's Motion to Dismiss and Messerli's Motion for Judgment on the Pleadings

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual allegations to state a claim for relief that is plausible on its face." *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (citation and quotation marks omitted). To assess the sufficiency of the complaint, courts accept as true all factual allegations and draw all reasonable inferences in favor of the non-moving party. *See Topchian*, 760 F.3d at 848. A Rule 12(c) motion for judgment on the pleadings is generally assessed under the same standards as a Rule 12(b)(6) motion. *See In re Pre-Filled Propane Tank Antitrust Litig.*, 893 F.3d 1047, 1056 (8th Cir 2018).

### A.   *The Sufficiency of The FCRA Allegations*

Capital One contends that Count One of the Amended Complaint—which alleges that Capital One violated the FCRA—must be dismissed because it contains insufficient factual allegations to state a plausible claim for relief. Under Rule 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To satisfy Rule 8, a complaint must plead facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

4

U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Courts therefore disregard legal conclusions couched as factual allegations to assess the sufficiency of the pleadings. *See id.*

1.  *Does the Amended Complaint adequately plead that Capital One lacked a permissible purpose to obtain Pone's credit report?*

Capital One argues that Count One must be dismissed because the Amended Complaint fails to plead that Capital One obtained Pone's credit report for an impermissible purpose. The Court disagrees. Section 1681b(a) of the FCRA provides an exclusive list of permissible purposes for which a CRA may supply consumer reports. *See Breese v. TRIADvantage Credit Servs., Inc.*, 393 F. Supp. 2d 819, 821 (D. Minn. 2005); *see also* 15 U.S.C. § 1681b(a). To succeed on an FCRA claim, a plaintiff must therefore establish that the defendant lacked a permissible purpose for obtaining her consumer reports. *See Breese*, 393 F. Supp. 2d at 821.

The Amended Complaint pleads a cogent theory of impermissible purpose. It asserts that by July 2016, Capital One was aware that the Accounts were the result of identity theft. (Am. Compl. ¶¶ 33, 48.) But after it sent letters to Pone explaining the fraud, Capital One still obtained Pone's credit report on multiple occasions. (*Id.* ¶ 48.)

A permissible purpose for Capital One to obtain Pone's credit report would most likely relate to a credit transaction or application for credit involving Pone, employment purposes, a business transaction initiated by Pone, or Capital One's extension of a firm

5

offer of credit to Pone. *See* 15 U.S.C. § 1681b(a), (c). At the time Capital One made these inquiries, none of these applied. (*See id.* ¶ 50.) In the context of the relationship between Pone and Capital One, it is unlikely other permissible purposes (for example, determining Pone's "eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status") would apply. *Id.* § 1681b(a)(3)(D).The Court finds these factual allegations, when construed in the light most favorable to Pone, sufficient to nudge the likelihood that Capital One had no permissible purpose to obtain Pone's credit reports across the line from conceivable to plausible. *See Twombly*, 550 U.S. at 570.

The Court is not persuaded by Capital One's cited authority. In the vast majority of cases cited by Capital One, the defendants appear to be debt collectors. *See, e.g.*, *Pyle v. First Nat'l Collection Bureau*, No. 1:12-CV-00288-AW, 2012 WL 1413970, at *3 (E.D. Cal. Apr. 23, 2012) ("Based on [d]efendant's name, [d]efendant appears to be a collection agency."); *Davis v. Schwab*, No. 4:12-CV-740-A, 2013 WL 704332, at *3 (N.D. Tex. Feb. 26, 2013) (noting complaint alleged that defendants told the plaintiff they "were reviewing an alleged medical debt owed by plaintiff"). As even Capital One's cited authority acknowledges, "[c]ourts have been especially skeptical of claims brought against debt collection agencies, given that debt collection agencies typically request credit reports for the permissible purpose of seeking the information in connection with the consumer's debt." *Thomas v. Fin. Recovery Servs.*, No. EDCV 12-1339 PSG OPX, 2013 WL 387968, at *4

(C.D. Cal. Jan. 31, 2013). Capital One is not a debt collection agency, and the Court has no reason to suppose that it acted with the permissible purpose of using the information to help collect a debt. *See* 15 U.S.C. § 1681b(a)(3)(A).

Unsurprisingly, several of the cases Capital One cites concluded that the complaints at issue failed to adequately allege that the defendants had no permissible purpose because on the face of the complaint it was plain that the defendants sought credit reports in connection with their debt collection activities. *See, e.g.*, *Davis*, 2013 WL 704332, at *3 ("[P]laintiff also alleges within his cause of action that defendants' counsel had responded to a letter written by plaintiff and explained that defendants had a permissible purpose for obtaining the consumer credit report because defendants were reviewing an alleged medical debt owed by plaintiff."); *Jacques v. Solomon & Solomon P.C.*, 886 F. Supp. 2d 429, 435 (D. Del. 2012) ("the complaint affirmatively alleges that [the defendant] contacted [p]laintiff in an effort to collect a debt"). Others presume, absent specific allegations to the contrary, that debt collectors acted with a permissible purpose. *See, e.g.*, *Betz v. Jefferson Capital Sys, LLC*, 68 F. Supp. 3d 130, 134 (D.D.C. 2014) ("Plaintiff's complaint fails to allege facts supporting a reasonable inference that defendant obtained his credit report for any purpose other than to collect on a delinquent account."); *Makreas v. The Moore Law Grp., A.P.C.*, No. C-11-2406 MMC, 2011 WL 3047634, at *2 (N.D. Cal. July 25, 2011) (finding plaintiff's conclusory allegation that the defendant lacked a permissible

purpose to obtain his report insufficient "particularly given" the allegation that the defendant was engaged in debt collection).

At oral argument, Capital One suggested that it is reasonable to infer from the Amended Complaint that Capital One obtained Pone's credit report for the legitimate business purpose of ascertaining whether the CRAs had responded to its deletion requests. *See* 15 U.S.C. § 1681b(a)(3)(F). Assuming without deciding that doing so would be a permissible purpose under section 1681b, the Court cannot draw this inference. The Amended Complaint pleads that Capital One obtained Pone's credit report three times in August 2017, more than a year after Capital One instructed the CRAs to delete all reference to Account x9399—and more than a year before it acted to vacate the default judgment entered against Pone. This timing does not make it reasonable to infer that, when Capital One obtained Pone's credit report, it was following up on the deletion requests it sent to the CRAs. Capital One has also argued that Pone has "failed to account for the most likely and plausible reason for Capital One's inquiries—i.e., that they were made in connection with an extension of a preapproved credit offer." (ECF No. 63 at 5.) But the Amended Complaint pleads that Pone did not learn that Capital One had obtained his credit report after 2016 until July 31, 2019, and "the implication is that [he] never received a firm offer of credit from Capital One." *Nayab v. Capital One Bank (USA), N.A.*, 942 F.3d 480, 497 (9th Cir. 2019). To the extent Capital One believes it can prove otherwise, it has the option to adduce admissible evidence and file a motion for summary

judgment. In sum, the Amended Complaint adequately pleads that Capital One lacked a permissible purpose to obtain Pone's credit report.

2.   *Does the Amended Complaint adequately plead that Capital One willfully violated the FCRA?*

In the alternative, Capital One argues that the Amended Complaint fails to allege that Capital One willfully violated the FCRA because it does not plead specific facts as to Capital One's mental state when Capital One accessed Pone's credit report. The Court disagrees. "Willfulness under the FCRA includes both knowing and reckless violations of the statute." *Beseke v. Equifax Info. Servs. LLC*, 420 F. Supp. 3d 885, 892 (D. Minn. 2019) (citing *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 56–57 (2007)). "Reckless conduct entails an unjustifiably high risk of harm that is known or so obvious that it should be known." *Id.* (cleaned up). And so "a willful violation requires that a party's reading of the FCRA is . . . objectively unreasonable." *Id.*

The factual allegations in the Amended Complaint, construed in the light most favorable to Pone, are sufficient to plead that Capital One willfully violated the FCRA. As noted above, the facts as alleged in the Amended Complaint set forth a narrative in which Capital One obtained Pone's credit reports on multiple occasions when it knew or should have known that it did not have an ongoing business relationship with Pone. Courts have found similar factual allegations sufficient to plead a "willful" mental state. *See, e.g.*, *Gagnon v. JPMorgan Chase Bank, N.A.*, 563 B.R. 835, 854 (N.D. Ill. 2017) (finding allegations as to defendant's willfulness sufficient where complaint alleged that

defendant "knew at the time it accessed the report that the debt was not collectible because it had been discharged in bankruptcy, but nonetheless invaded Plaintiff's privacy by illegally accessing his credit file"); *Adler v. DirecTV, LLC*, No. CV 18-1665-DMG (PJWx), 2018 WL 6981838, at *5 (C.D. Cal. Oct. 24, 2018) (noting no reasonable reading of the statute would suggest a permissible purpose "where the consumer and the company have no previous or ongoing relationship, the consumer has not initiated a business transaction or applied for credit with the company, the consumer [has no employment relationship] with the company, and the consumer did not authorize the furnishing of his credit report"). In short, the Amended Complaint adequately alleges that Capital One knew or should have known that it did not have a permissible purpose to obtain Pone's report after 2016 and therefore willfully violated the FCRA when it did so.

Even if the Court agreed that the Amended Complaint does not sufficiently plead that Capital One willfully violated the FCRA, this would not mandate dismissal of Count One. The FCRA imposes civil liability for both willful and negligent violations. *See Saumweber*, 2015 WL 2381131, at *3; *see also* 15 U.S.C. §§ 1681n; 1681o. Capital One does not appear to contest that the Amended Complaint adequately alleges that it acted negligently. Rather, it seems to believe that because Pone seeks statutory and punitive damages, he is only seeking to recover for willful violations of the FCRA. (*See* ECF No. 49 at 9 n.3.) But Count One pleads not only that "Capital One's conduct . . . [was] willful" but also that, "[a]lternatively, Defendant Capital One's violations were negligent." (Am.

Compl. ¶ 66–67.) And it cites to both 15 U.S.C. § 1681n and 15 U.S.C. § 1681o. (Am. Compl. ¶¶ 66–68.)  Thus, even if Capital One were correct that the Amended Complaint fails to plead its willfulness, Pone would be barred from recovering under 15 U.S.C. § 1681n but not 15 U.S.C. § 1681o.

**B.**      *Rooker-Feldman Doctrine*

Capital One contends that under the *Rooker-Feldman* doctrine, this Court lacks jurisdiction to address Pone's state law claims since they seek to challenge the validity and enforceability of a state court judgment. The Court disagrees and finds it appropriate to exercise supplemental jurisdiction over Pone's state law claims. The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *MSK EyEs Ltd. v. Wells Fargo Bank, Nat. Ass'n*, 546 F.3d 533, 539 (8th Cir. 2008) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). It does not apply to cases that seek to hold defendants liable for alleged wrongful conduct in obtaining and enforcing state court decisions. *See id.*

This case does not seek to challenge the validity and enforceability of a state court judgment. The default judgment entered against Pone was vacated in 2019, so nothing remains of that judgment for Pone to challenge. Nor is Pone contesting the validity of the 2019 order vacating that default judgment. Rather, Pone complains of the defendants'

conduct in obtaining and enforcing those orders. He asserts that the defendants waited too long to vacate the 2013 default judgment and that they falsely represented to the state court that Pone might still owe Capital One when they obtained an order vacating that default judgment "without prejudice." In sum, Pone's claims "are independent and not barred by *Rooker-Feldman* because they allege unlawful conduct only in seeking and executing" state court orders. *MSK EyEs Ltd.*, 546 F.3d at 539 (cleaned up).

### C.     *Preemption of State Law Claims Asserted Against Capital One*

Capital One also contends that the FCRA preempts Pone's state law claims. Capital One is partially correct: FCRA preempts some, but not all, of the state law claims. The preemption provisions at issue are 15 U.S.C. § 1681h(e) and § 1681t(b)(1)(F), which expressly preempt certain state law claims brought against entities that furnish information to CRAs.

Section 1681h(e) provides that, "[e]xcept as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). Section 1681t(b)(1)(F) states that "[n]o requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to information contained

in consumer reports." 15 U.S.C. § 1681t(b)(1)(F). Thus, section 1681h(e) purports to preempt some state law claims unless the credit reporting agency acted with malice or willful intent to injure the consumer, whereas section 1681t(b)(1)(F) sweeps more broadly, and appears to preempt state law claims even if the credit reporting agency acts maliciously or willfully.

Courts have struggled to understand the interplay between these express preemption provisions, adopting various approaches to resolve the perceived conflict. *See, e.g.*, *Malm v. Household Bank (SB), N.A.*, No. Civ. 03-4340ADMAJB, 2004 WL 1559370, at *6 (D. Minn. July 7, 2004) (adopting the so-called "temporal approach"); *James v. MRC Receivables Corp.*, No. CV 16-0448, 2018 WL 3213147, at *8 (W.D. La. June 28, 2018) (adopting the so-called "statutory approach"). The Eighth Circuit has yet to speak on the issue. However, the Seventh, Second, and Sixth Circuits have concluded that the FCRA's preemption provisions are not in conflict: "[s]ection 1681h(e) preempts some state claims that could arise out of reports to credit agencies; § 1681t(b)(1)(F) preempts more of these claims." *Purcell v. Bank of America*, 659 F.3d 622, 625 (7th Cir. 2011);  *see also Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47 (2d Cir. 2011) (concluding "the operative language in § 1681h(e) provides only that the provision does not preempt a certain narrow class of state law claims; it does not prevent the later-enacted § 1681t(b)(1)(F) from accomplishing a more broadly-sweeping preemption"); *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 521 (6th Cir. 2019) (finding persuasive the reasoning in *Purcell* and *Macpherson*

to conclude that the provisions are not in conflict). This Court joins other district courts that have been persuaded by the reasoning of these three Circuits. *See, e.g., Hyde v. Franklin Am. Mortg. Co.*, No. 4:18-CV-04113-KES, 2020 WL 1703858, at *10 (D.S.D. Apr. 8, 2020) (noting the Eighth Circuit would likely follow the Seventh and Second Circuits); *Bridges v. J.C. Penney Corp., Inc.*, No. 8:13CV157, 2014 WL 12576320, at *5 (D. Neb. Apr. 21, 2014) (same); *see also, e.g., Groettum v. Kohl's Dep't Stores, Inc.*, No. 19-cv-2505 (ECT/DTS), 2020 WL 788945, at *3 (D. Minn. Feb. 18, 2020) (finding persuasive the reasoning of the Seventh, Second, and Sixth Circuits). The Court therefore addresses separately Capital One's arguments as to preemption under each provision.

1. *Does 15 U.S.C. § 1681h(e) preempt the state law claims asserted against Capital One?*

Capital One contends that Pone's state law claims are preempted because the Amended Complaint does not plead malice or willful intent within the meaning of section 1681h(e). Section 1681h(e) preempts a consumer's claims for defamation, invasion of privacy, or negligence against a furnisher "with respect to the furnishing of information" to the CRAs unless the consumer can show that the furnisher acted "with malice or willful intent to injure." 15 U.S.C. § 1681h(e). "Malice or willful intent to injure" requires that a statement be made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Thornton v. Equifax, Inc.*, 619 F.2d 700, 705 (8th Cir. 1980) (quoting *Sullivan*, 376 U.S. at 705). The Amended Complaint meets this

14

standard of pleading malice or willful intent. Thus, Pone's state law claims are not preempted by section 1681h(e).

2.   *Does 15 U.S.C. § 1681t(b)(1)(F) preempt the state law claims asserted against Capital One?*

Capital One also argues that section 1681t(b)(1)(F) preempts all state law claims asserted against Capital One. This provision preempts some, but not all, of these claims. Section 1681t(b)(1)(F) preempts claims that concern a defendant's responsibilities as a furnisher under the FCRA. *See Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 446 (2d Cir. 2015). But it does not preempt state law claims if they "do not also concern [the] defendant's legal responsibilities as a furnisher of information under the FCRA." *Galper*, 802 F.3d at 446. Thus, to the extent that Pone's common law claims seek to hold Capital One liable for "erroneous or otherwise improper furnishing of information" to the CRAs, they are preempted. *Galper*, 802 F.3d at 449. But to the extent they seek to hold Capital One liable for conduct unrelated to its obligations as a furnisher, they fall outside the scope of preemption under section 1681t(b)(1)(F). *See, e.g., id.* (concluding claims were not preempted to the extent they sought to hold defendant liable based on acts "distinct from any erroneous or otherwise wrongful actions by [defendant] in furnishing information to" the CRAs).

Capital One does not appear to dispute that the scope of preemption under section 1681t(b)(1)(F) is limited to state law claims arising from a defendant's responsibilities as a data furnisher. It instead argues that all of Pone's state law claims "hinge on the

15

allegation that Capital One 'mis-reported' and caused to be published inaccurate information to the CRAs." (ECF No. 63 at 12.) In other words, Capital One argues that these claims arise out of its duties as a furnisher of information to the CRAs. Pone's common law credit defamation claim against Capital One appears to rest at least in part on the allegations that Capital One reported to the CRAs that Pone was delinquent on Account x9399 when it knew that both Accounts were the result of fraud. (*See* Am. Compl. ¶¶ 36, 70.) And Pone suggests in his briefing that his common law negligence claim is also based in part on these allegations. (ECF No. 60 at 16–17). Allegations that a furnisher reported incorrect information to CRAs "concern" a furnisher's responsibilities under the FCRA. *See, e.g., Munroe v. Nationstar Mortg. LLC*, 207 F. Supp. 3d 232, 240 (E.D.N.Y. 2016) (holding section 1681t(b)(1)(F) preempted claims seeking to hold defendant liable for intentionally providing CRAs with reports of "multiple erroneous, fabricated amounts allegedly due and owing" (citation omitted)). Thus, these claims are preempted.

But it is also apparent that Pone's common law invasion of privacy and negligence claims seek to hold Capital One liable for waiting too long to vacate the 2013 default judgment against Pone and doing so without, rather than with, prejudice. (*See id.* ¶¶ 73, 80). In so doing, the claims do not touch upon "any subject matter regulated under . . . section 1681s-2 . . . relating to the responsibilities of persons who furnish information to

consumer reporting agencies." 18 U.S.C. § 1681t(b)(1)(F). Thus, these claims are not preempted.

### D.    *Count 2: Common Law Credit Defamation Asserted Against Capital One*

Having determined that section 1681t(b)(1)(F) preempts Pone's common law credit defamation claim to the extent it seeks to hold Capital One liable for the statements it made to the CRAs, the Court turns to Capital One's arguments that the Amended Complaint pleads no other actionable statements. Under Minnesota law, which applies to Pone's common law claims, "[t]o succeed on a defamation claim, a plaintiff must establish that a false statement was communicated to someone other than the plaintiff and harmed the plaintiff's reputation or lowered him in the 'estimation of the community.'" *MSK EyEs Ltd. v. Wells Fargo Bank*, No. 05-999 (DSD/SRN), 2007 WL 1965549, at *7 (D. Minn. July 3, 2007), *aff'd sub nom.* 546 F.3d 533 (8th Cir. 2008) (quoting *Stuempges v. Park, Davis & Co.*, 297 N.W.2d 252, 255 (Minn. 1980)).

Capital One argues that, to the extent Pone seeks to hold Capital One liable for any statements made in connection with obtaining the 2013 default judgment and vacating that judgment in 2019 without prejudice, such statements are not actionable because they are privileged. The Court agrees. Under Minnesota law, judicial immunity extends to witnesses as well as other participants in the judicial process; they are absolutely immune from suit based on statements made in connection with a judicial proceeding. *See Mahoney & Hagberg v. Newgard*, 712 N.W.2d 215, 219 (Minn. Ct. App. 2006), *aff'd*, 729 N.W.2d 302

(Minn. 2007). Thus, any statements made by Capital One in connection with the state court judgments are subject to absolute immunity. These are the only statements, other than the ones made to the CRAs, that the Amended Complaint suggests may form the basis of Pone's credit defamation claim. (*See* Am. Compl. ¶ 70.) Because Pone's credit defamation statement is preempted to the extent it seeks to hold Capital One liable for the statements it allegedly made to the CRAs and Capital One is immune from suit with respect to statements made in connection with the state court judgments, Count Two of the Amended Complaint should be dismissed.

E.     ***Count 3: Common Law Invasion of Privacy Asserted Against Capital One & Messerli***

Both Capital One and Messerli argue that the Amended Complaint fails to state a claim for common law invasion of privacy. The Court agrees. As Pone acknowledges, Count Three asserts a claim for publication of private facts. (ECF No. 60 at 12–15.) This is one of the kinds of invasion of privacy claims Minnesota courts recognize. *See Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 236 (Minn. 1998). To succeed on a claim for publication of private facts, a plaintiff must establish that the defendant "gives publicity to a matter concerning the private life of another . . . if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Id.* at 233 (quoting Restatement (Second) of Torts § 652D). "[T]here are two methods to satisfy the publicity element of an invasion-of-privacy claim: the first method is by proving a single communication to the public, and the second method is by proving

communication to individuals in such a large number that the information is deemed to have been communicated to the public." *Yath v. Fairview Clinics, N.P.*, 767 N.W.2d 34, 42 (Minn. Ct. App. 2009).

Pone's common law invasion of privacy claim rests on the allegations that Capital One and Messerli allowed the 2013 default judgment against Pone to stand for almost three years after Capital One determined that the Accounts were fraudulent. (*See, e.g.*, Am. Compl. ¶¶ 39, 51, 55, 77.) Pone's claim is not based on the defendants obtaining the judgment in the first place. Rather, Pone's publication-of-private-facts claim seeks to hold the defendants liable for the consequences of the dissemination of the 2013 default judgment. But the Amended Complaint alleges that public records vendors, not the defendants, "harvested the default judgment information and communicated it to the [CRAs] who in turn began to publish this highly derogatory and erroneous information on Plaintiff's credit reports to his current and prospective creditors." (Am. Compl. ¶ 27.) It does not plead that either Capital One or Messerli disseminated the 2013 default judgment to anyone. Therefore, Count Three of the Amended Complaint should be dismissed. *See, e.g.*, *C.L.D. v. Wal-Mart Stores, Inc.*, 79 F. Supp. 2d 1080, 1084 (D. Minn. 1999) (concluding complaint failed to state a claim for publication of private facts where it did not allege that the defendant disclosed the plaintiff's private information "in the media or in any form accessible to the population at large").

F.     *Count 4: Common Law Negligence Asserted Against Capital One & Messerli*

Both Capital One and Messerli contend that the Amended Complaint fails to state a claim for negligence. Again, the Court agrees. "The essential elements of a negligence claim are: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury was sustained; and (4) breach of the duty was the proximate cause of the injury." *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995). Similar to Pone's invasion of privacy claim, Pone's negligence claim rests on the allegations that the defendants let the 2013 default judgment stand for almost three years after learning that the Accounts were fraudulent and only vacated it without prejudice. (*See* Am. Compl. ¶¶ 80–81.) And once again, Pone does not seek to hold defendants liable for obtaining the 2013 default judgment before they realized that Pone was the victim of identity theft; rather, he contends that it was negligent not to promptly vacate the default judgment with prejudice after determining that the Accounts were the result of fraud.

As a general matter, "[i]naction by a defendant . . . constitutes negligence only when the defendant has a duty to act for the protection of others." *Domagala v. Rolland*, 805 N.W.2d 14, 23 (Minn. 2011). There are two circumstances in which the law imposes such a duty to act on a defendant: (1) "when there is a special relationship between a plaintiff and a defendant and the harm to the plaintiff is foreseeable" and (2) when the defendant engaged in "active misconduct working positive injury to others" that created "a foreseeable risk of injury to a foreseeable plaintiff." *Doe 169 v. Brandon*, 845 N.W.2d 174, 178 (Minn. 2014) (cleaned up). Neither are implicated here. First, Pone acknowledges

that he did not have a special relationship with either Capital One or Messerli. Second, the Amended Complaint does not allege that either Capital One or Messerli engaged in active misconduct when they obtained the default judgment against Pone Instead, it complains that they did nothing after learning that the Accounts were fraudulent rather than promptly vacating the default judgment with prejudice. Such conduct is the sort of "passive inaction" that is insufficient to invoke the second set of circumstances. *See id* (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 56 (5th ed.1984)). Neither Capital One nor Messerli owed Pone a duty of care.  Count Four of the Amended Complaint will be dismissed.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.      Capital One's motion to dismiss (ECF No. 48) is denied as to Count One and granted as to Counts Two, Three, and Four; and

2.      Messerli's motion for judgment on the pleadings (ECF No. 19) is granted.

3.      Counts Two, Three, and Four of the Amended Complaint are hereby dismissed with prejudice.

Dated: September 29, 2020                          BY THE COURT:

                                                  s/Nancy E. Brasel
                                                  Nancy E. Brasel
                                                  United States District Judge